UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

MICHAEL HELMHOLTZ,

    Plaintiff,

v.   Case No. 1:21cv62-MCR-HTC

BP EXPLORATION &
PRODUCTION, INC., et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Helmholtz, proceeding *pro se*, sues Defendants BP Exploration and Production, Inc., and BP America Production Co. (collectively "BP") for physical injuries he contends were caused by exposure to oil or the dispersants used during the clean-up efforts from the Deepwater Horizon oil spill. Pending before the Court is BP's motion for summary judgment based on Plaintiff's failure to present any expert on causation. ECF Doc. 38. Upon consideration of the motion, Plaintiff's response, ECF Doc. 52, and the relevant case law, the undersigned recommends the motion be GRANTED.

## I. BACKGROUND[1]

On April 20, 2010, a massive and unprecedent oil spill occurred in the Gulf of Mexico when the Deepwater Horizon mobile offshore oil-drilling rig, operated by BP and located approximately 125 miles offshore of Florida, exploded. During the months immediately following the explosion, over 90,000 people and 7,000 vessels were employed to address the Deepwater Horizon oil spill ("DWH Spill"). The incident resulted in thousands of claims being filed against BP, which were originally consolidated in the Eastern District of Louisiana as part of the Deepwater Horizon multidistrict litigation (MDL No. 2179), and presided over by Judge Carl J. Barbier.

The MDL court approved a comprehensive Medical Benefits Class Action Settlement Agreement ("Settlement Agreement") for personal injury plaintiffs. The Settlement Agreement provided a claims process for eligible class members who were diagnosed with a specified physical condition on or before April 16, 2012, and a separate litigation option for those seeking compensation for "Later-Manifested Physical Conditions" ("LMPCs"), defined as a physical condition diagnosed after the April 2012 cutoff date. This separate litigation of claims is known as the "Back End Litigation Option" ("BELO"). The Settlement Agreement specified certain

---

[1] The Williams Order contains a detailed discussion of the background of this litigation, the DWH spill, response and data collection, and a discussion of the makeup and constituency of crude oil and dispersants.

issues that either may or need not be litigated in a BELO suit, including "the amount and location of substances released in connection with the spill and response, the level and duration of a plaintiff's exposure, and legal causation." *In re Deepwater Horizon Belo Cases,* No. 3:19cv963, 2020 WL 6689212, at *6 (N.D. Fla. Nov. 4, 2020), *aff'd sub nom. In re Deepwater Horizon BELO Cases,* No. 20-14544, 2022 WL 104243 (11th Cir. Jan. 11, 2022).

At the time of the oil spill, Plaintiff resided in Hernando Beach, Florida, and owned a business called Above the Reef, which harvested live marine life for wholesale to pet retail stores. ECF Doc. 1 at 18. Plaintiff alleges that in the process of harvesting marine life, he was exposed to oil and dispersants from the DWH Spill. *Id.* Plaintiff further alleges that as a result of this exposure he "suffered from chemical burns to his skin, lungs and eyes from direct contact with dispersants; nose bleeds, rash and irritated skin, headaches, blurry vision, burning eyes, breathing and respiratory difficulties," ECF Doc. 52 at 2; ECF Doc. 38 at 5, and has also been diagnosed with Chronic Obstructive Pulmonary Disease (COPD), *id.*

Plaintiff initially filed this case in the Eastern District of Louisiana on April 6, 2017, and the case was designated by Judge Barbier as part of the "B3 Pleading Bundle."[2] ECF Doc. 10 at 3; ECF Doc. 31 at 2. In April 2021, Judge Barbier

---

[2] Early on in the MDL, Judge Barbier organized claims by type into one of several "pleading bundles." The claims in the "B3 Pleading Bundle" include personal injury claims due to chemical

transferred Plaintiff's case to this Court pursuant to 28 U.S.C. § 1404(a) for individual discovery and trial. *Id.*

On September 28, 2021, the Court entered a Case Management Order ("CMO") governing this case which included the following deadlines: a discovery deadline of September 28, 2022, an expert disclosure deadline for Plaintiff of April 26, 2022, an expert disclosure deadline for Defendants of June 27, 2022, and a dispositive motion deadline of October 28, 2022. ECF Doc. 31. The CMO also specifically states that "expert witnesses not timely disclosed as required by Rule 26(a)((2) … will normally not be permitted to testify at trial." *Id.* at 4.

On May 9, 2022, after the Plaintiff's expert disclosure deadline passed, BP filed the instant motion for summary judgment. ECF Doc. 38. On May 27, 2022, Plaintiff, through counsel, filed a motion to extend the deadline for Plaintiff to respond to BP's motion for summary judgment, ECF Doc. 39, and a separate motion to continue the CMO deadlines, ECF Doc. 40, both citing as a basis for the continuance counsel's intent to withdraw. BP opposed the motion to continue on several grounds, including that any extension of then-unexpired deadlines would be futile because Plaintiff had already missed his expert disclosure deadline by a month,

---

exposure, non-exposure personal injury claims, and contract claims, among others. ECF Doc. 10 at 3. Many B3 plaintiffs either opted out of the Settlement Agreement or were not members of the settlement class. *Id.* at 4.

leaving him without any expert on causation. ECF Doc. 42. On June 9, 2022, counsel moved to withdraw, citing a breakdown in communications – specifically that Plaintiff did not agree with counsel's recommendation to voluntarily dismiss the case. ECF Doc. 41. Plaintiff filed a response to the motion to withdraw, complaining of deficient representation by counsel, seeking answers from counsel, and also including "a list of expert witnesses testifying to health of plaintiff, water quality and damage done by dispersant and oil spill in the Tampa Bay." ECF Doc. 45.

On July 13, 2022, the Court granted the motion to withdraw, finding "Plaintiff's insistence that counsel pursue his claims in the face of no evidence to support them constitutes a fundamental disagreement" that constitutes "good cause" to grant the withdrawal. ECF Doc. 47 at 4. The Court gave Plaintiff thirty (30) days to retain new counsel or advise the Court he intends to proceed *pro se*. ECF Doc. 47. On July 15, 2022, the Court issued a Summary Judgment Notice, advising Plaintiff of his responsibility to file an opposition to the motion for summary judgment and giving Plaintiff until September 15, 2022, to do so. ECF Doc. 49. On August 8, 2022, Plaintiff filed a notice advising the Court of his intent to proceed *pro se*. ECF Doc. 50. On August 8, 2022, the Court denied Plaintiff's motion to extend the CMO deadlines. ECF Doc. 51. Plaintiff filed a response to the motion

for summary judgment on September 15, 2022, making it, as Plaintiff acknowledges, "ripe for consideration." ECF Doc. 52 at 7.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of the claim. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To avoid summary judgment, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal marks omitted). However, summary judgment cannot be avoided through evidence that is "inadmissible at trial." *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1313 (11th Cir. 2014) (quoting *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007)).

## III. ANALYSIS

For Plaintiff to succeed on his claims against BP in this case, Plaintiff must show BP caused his injuries. The causation requirement in a toxic tort case involves a showing of general causation and specific causation. General causation is concerned with whether a "drug or chemical *can* cause the harm plaintiff alleges," that is, whether a chemical agent "increases the incidence of disease in a group."[3] *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005). "Specific causation is established by showing that exposure to the allegedly toxic drug or chemical actually caused an individual plaintiff's injury." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1306 (N.D. Fla. 2018). If a plaintiff does not present evidence as to general causation, there is no need for the court to address specific causation. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").

It is well settled that to establish general and specific causation, a toxic tort plaintiff must present admissible expert testimony. *Chapman,* 766 F.3d at 1316 ("To prove Fixodent caused Marianne Chapman's CDM, the Chapmans were *required* to

---

[3] Although there is a category of toxic tort cases which the Eleventh Circuit has recognized as not requiring a showing on general causation, namely those cases where the toxicity of a drug or chemical has been recognized by the medical community as being toxic and capable of causing the injuries alleged by a plaintiff, *McClain*, 401 F.3d at 1239, this case does not fall in that category. *See In re Deepwater Horizon Belo Cases,* 2020 WL 6689212, at *12 (N.D. Fla. Nov. 4, 2020).

Case No. 1:21cv62-MCR-HTC

have *Daubert*-qualified, general and specific-causation-expert testimony that would be admissible at trial to avoid summary judgment."); *McCLain,* 401 F.3d at 1237. Without such testimony, Plaintiff cannot create a material question of fact. *See id.* Thus, because legal causation can only be established through admissible expert testimony, numerous courts in this circuit and the Fifth Circuit in similar BELO and B3 cases, including this Court, have granted summary judgment after excluding a causation expert. *See e.g., In re Deepwater Horizon BELO Cases*, No. 3:19cv963, 2020 WL 6689212, at *17 (granting summary judgment in first pool of test cases after excluding plaintiffs' sole general causation expert).

Plaintiff does not dispute he needs expert testimony to establish causation. He cites this Court's decision in *In re Deepwater Horizon BELO Cases* for the position that "the minimal facts necessary to prove causation are (1) scientific knowledge of the harmful level of exposure to a particular chemical, and (2) knowledge that the plaintiff was exposed to such quantities." ECF Doc. 52 at 6 (citing *In re Deepwater Horizon BELO Cases*, 2022 WL 104243 at *15). He also does not dispute he failed to disclose any experts by the Court's April 26, 2022, deadline. ECF Doc. 52 at 4. Instead, he makes two arguments. First, he argues he disclosed experts on July 7, 2022. *Id.* Second, he argues he need not rely on expert testimony to establish causation and can rely on "medical examination records and the testimony of other

treating nurses and physician assistants, or even other medical experts." ECF Doc. 52 at 7. The undersigned finds both arguments to be flawed.

To the extent Plaintiff contends his July 7 "Designation," ECF Doc. 46, (docketed on July 8), is timely – it is not. The CMO set an expert disclosure deadline for Plaintiff of April 26, 2022. Contrary to Plaintiff's assertion, the Court *did not* extend that deadline. Indeed, in May 2022, when Plaintiff's then-counsel filed a motion for an extension of the CMO deadlines, he did not ask to extend Plaintiff's then-expired expert disclosure deadline. ECF Doc. 40. Regardless, the Court *denied* that motion for a continuance. ECF Doc. 51. Also, when the Court granted counsel's motion to withdraw on July 13, 2022, the Court *did not* extend any deadlines and certainly did not reopen any expired deadlines. ECF Doc. 47. The Court simply gave Plaintiff thirty (30) days to retain counsel or advise the Court of his intent to proceed *pro se*. *Id.* at 9. Thus, as an initial matter it is undisputed Plaintiff did not timely disclose any experts and Plaintiff is simply incorrect that "expert discovery remains open." ECF Doc. 52 at 7.

Regardless, even if Plaintiff had moved to extend his expert disclosure deadline, Plaintiff would be unable to establish either excusable neglect or good cause as necessary to seek a modification of the Court's deadline *after* the deadline expired. *See* Fed. R. Civ. P. 6(b)(1)(B) (requiring both a showing of good cause and excusable neglect if a motion is made after the time for acting has expired); Fed. R.

Civ. P. 16(b)(4) (a "schedule may be modified only for good cause and with the judge's consent"). The Court gave Plaintiff seven (7) months from the date of the CMO to disclose experts. Plaintiff's counsel moved for an extension of the CMO deadlines less than a month after the deadline had expired and did not ask to reopen Plaintiff's expert disclosure deadline. More importantly, in both Plaintiff's prior submissions to this Court and his then-counsel's submissions, counsel explained counsel's experts "have been unable to determine the presence of any oil and/or dispersants in the Gulf of Mexico as far south as the Tampa area." ECF Doc. 45-5. Thus, it appears the reason Plaintiff did not timely meet his expert disclosure deadline is because there were no favorable experts to disclose.

Moreover, even if the Court were to accept Plaintiff's July 7 "Designation" as timely, it does not meet the Federal Rules' disclosure requirements. Under Federal Rule 26(a)(2)(B), a disclosure "must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specifically employed to provide expert testimony in the case…." The Rule also sets forth the requirements for the report as including the following: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which,

during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." *Id.*

Plaintiff has provided none of this information for the experts he purports to rely upon. Plaintiff's listing that was included with his response to the motion to withdraw, ECF Doc. 45, contains nothing more than the experts' names and addresses, and while Plaintiff contends in the Designation that the experts' "reports" have been included, the exhibits attached to the Designation are not reports at all. For example, the purported "report" for Jessica R. McCawley says nothing more than that she worked with Plaintiff on the Marine Life Advisory Board, and he assisted her to help create the FWC Officers' Field Guide Handbook. It contains no opinions, no basis for any opinions, and minimal background information for her. ECF Doc. 46 at 5. The purported "reports" for Drs. Burbank and Greenfield are simply limited excerpts of Plaintiff's medical records. ECF Doc. 46 at 9 (Patient Summary), ECF Doc. 18 (Patient Ledger). The purported "report" for Dan Fenton, who Plaintiff states he retained "to provide expert testimony" (without any description of what the opinions are) is a one-page handwritten note, addressed to "To whom it may concern," in which Mr. Fenton identifies himself as a marine life collector and stating that his "losses were compensated from the BP Fund setup." ECF Doc. 46 at 16. The note contains no opinions, much less a basis for them. *Id.*

Thus, even if the Court were to consider Plaintiff's belated designations, they are clearly not sufficient under the Rules. Moreover, nothing Plaintiff has submitted contains any opinions on general or specific causation.

Although Plaintiff is proceeding *pro se*, he is bound to follow the rules of the Court and the Federal Rules of Civil Procedure. The Court advised him of this obligation when it granted counsel's motion to withdraw. ECF Doc. 47 at 4 ("The Court reminds Plaintiff of these obligations because *pro se* litigants are subject to the same law and rules of court as litigants who are represented by counsel, including the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Northern District of Florida. *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)). Additionally, although the Court should read a *pro se* party's filings liberally, even doing so here does not save Plaintiff's case. No reading of the Designation, no matter how liberal, would satisfy Federal Rule of Civil Procedure 26(a)(2).

Finally, to the extent Plaintiff's second argument is that no causation expert is required, he is once again incorrect.[4] In *McCasland v. Pro Guard Coatings, Inc.*, 799 F. App'x 731 (11th Cir. 2020), the plaintiff made a similar argument – arguing "a reasonable jury could find a causal nexus as a matter of logical reasoning." *Id.* at

---

[4] Included in Plaintiff's opposition is an argument regarding diagnosis. However, nowhere in BP's motion do they seek judgment based on a lack of diagnosis. Thus, the undersigned finds no need to address that part of Plaintiff's opposition.

Case No. 1:21cv62-MCR-HTC

734. Specifically, the plaintiff argued he developed medical problems after using Liquid Roof and breathing its fumes regularly and his symptoms matched the symptoms described on the product's warning label. *Id*. The court disagreed and stated, "the question of whether Liquid Roof caused [plaintiff's] injuries is a matter 'beyond the understanding of the average lay person.'" *Id.* (quoting *United States v. Frazier*, 387 F. 3d 1244, 1262 (11th Cir. 2004)). Thus, without any admissible expert testimony on causation, no reading of Plaintiff's opposition, no matter how liberal, would create a genuine issue of material fact as to causation. BP is entitled to summary judgment. *See e.g., In re Deepwater Horizon Belo Cases,* 2020 WL 6689212 at *17 ("absent a qualified expert to testify about general causation, Plaintiffs cannot survive summary judgment").

Accordingly, it is RECOMMENDED:

1. BP's Motion for Summary Judgment, ECF Doc. 38, be GRANTED.

2. The clerk be directed to close the file.

At Pensacola, Florida, this 13th day of December 2022.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>**  An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**